Honorable Garnett A. Kelly Representative, District 143 Route 2 Norwood, Missouri 63261
Dear Representative Kelly:
This letter is in response to your question asking as follows:
 "Under the terms and conditions of House Bill 224 as passed by the 1st Regular Session of the 79th General Assembly, does the City of Mountain Grove, Mo., have any legal right to sell any of the buildings on said property?"
The legislation to which you refer was effective September 28, 1977. It authorizes the Governor to convey to the City of Mountain Grove of Wright County, Missouri, "for public use," title to certain lands consisting of property formerly occupied by the State Poultry Experiment Station described particularly therein.
Section 2 of the bill provides:
 "The instrument of conveyance shall contain a reversionary clause providing that in the event that the city of Mountain Grove no longer desires to utilize or hold title to such property, the city shall not be permitted to convey title to any third party and the title shall then revert to and vest in the governor of the state of Missouri."
An instrument of conveyance drawn to meet the requirements of the bill would create a defeasible fee.
We understand from the city attorney, Mr. John W. Bruffett, of Ava, Missouri, that there are about twenty-seven buildings which are to be razed, such buildings largely being approximately 12 x 12 feet square with generally sloping roofs and on concrete slab foundations. We understand that these buildings were formerly used as poultry experimental buildings. We have in our file four pictures each being identified and marked as exhibits. We understand such pictures are representative of the buildings which are to be razed.
We further understand that it is the city's desire that the buildings be auctioned on the site of the real estate where now located and that hopefully enough money will be received from the sale of the buildings to recover the cost of removing the concrete slab foundations of some of the buildings.
We further understand that the primary reason for removing the structures as described is to provide the best possible usage of the real estate and that it is the goal of the city that part of the land will be available for rent to a private not for profit corporation which will construct a nursing home serving a wide area of Missouri and Arkansas and that the removal of the structures described will permit better usage of the land for parking and storage areas. The expected proceeds from the sale are relatively small and presumably it will cost the city as much as received from the sale or more to dispose of the buildings' concrete slabs. It is argued by the city that the city will never utilize the buildings in the poultry business and that the removal of the buildings will provide for maximum present and future utilization of the real estate, that the value of the land will be increased by the removal of the buildings and that the increase in the value of the real estate will increase the value of the estate remaining in the State of Missouri.
From the facts presented to us, we believe it is unnecessary to determine whether or not the removal of the buildings will constitute waste or whether or not waste as respects this property would cause a reverter or simply be the subject of a suit for monetary damages.
We believe that the removal of the buildings, as described, would be acceptable and in accordance with the legislative intent in enacting House Bill 224; and, therefore, we see no conflict between the proposed action of the city in removing and selling these buildings and the legislative purpose in restricting the use of the property.
There is, however, a question which is raised by the statement that the city apparently intends that other buildings on the land will be available for rent to a private corporation. In this respect, we wish to caution the city that the conveyance is expressly "for the use of the city of Mountain Grove . . . for public use". The reversionary clause which must be contained in the instrument of conveyance, consistent with the express provisions of House Bill 224, will provide that in the event the city of Mountain Grove no longer utilizes or holds title to such property for public use, the title shall then revert to and vest in the Governor of the State of Missouri.
We note that Ballentine's Law Dictionary, 1948 Ed., p. 1050, states with respect to the definition of the term "public use":
 "A use to which all persons have an equal right, in common, and upon the same terms, however few the number who may avail themselves of it. It is not essential to a public use that its benefits should be received by the whole public, or even a large part of it, but they must not be confined to specified privileged persons."
Thus it appears that the lease of the property to a private corporation, even a not for profit corporation, assuming such leases are otherwise possible under the statutes as respects other property generally held by the city, would in any event not be for a "public use" or a utilization of such property by the city as required by the legislature in authorizing such conveyance.
We do not attempt to determine here whether the city has authority to enter into such a lease.
Therefore, while it is our view that the razing of the buildings as described would not be inconsistent with the legislative purpose in authorizing such conveyance to the city, the leasing of such property or any part thereof for private purposes would be contrary to the requirement that the conveyance is for "public use." Thus it is our view that the conveyance of such leasehold interests would cause a reverter under House Bill 224.
Under these circumstances, it would be inappropriate for this office to approve the conveyance of the property to the city of Mountain Grove.
Very truly yours,
 JOHN ASHCROFT Attorney General